### NICKLES v. SEABOARD AIR LINE Ry.

1. EVIDENCE—RAILROADS.—A witness in describing a wreck may state what injuries he received and that another train ran into the wreck.

2. EVIDENCE—IBID.—PAROL—WRITINGS—PASS.—Statement by a passenger that he would not have taken passage on a particular train for benefit of the railroad company unless passage was also given his wife, does not contradict the terms of the pass on which it was stipulated that it was free.

3. PROBATE COURT—ADMINISTRATORS—RECORDS—WRITINGS.—After introduction of record of probate court granting administration, it is not proper to ask administrator on cross-examination if he had been sworn in.

4. EVIDENCE—OPINION—RAILROADS.—An expert machanic who has inspected a wrecked trestle may describe the condition of the wreck, but cannot give his opinion as to what caused it.

5. IBID.—RAILROADS—NEGLIGENCE.—It is competent to ask a witness if the railroad company had settled with him for injuries received in a certain wreck in suit for negligent killing of another in same wreck.

MESSRS. JUSTICE WOODS *and* JONES *are of opinion the evidence was not admissible but harmless, because the witness was an employee and the railroad company only paid his wages while disabled.*

6. JURY—RAILROADS—PASS—EVIDENCE—PAROL.—Whether the wife is transported on a free pass is properly submitted to the jury, where the husband agreed to go to a certain point to testify for the railroad company on condition that the company furnish transportation for his wife also, and if the jury finds the pass was issued for a consideration, the company is not relieved of liability for negligent killing of the wife by a stipulation to that effect on back of pass, and the fact of valuable consideration for the pass may be shown by parol.

7. PUNITIVE DAMAGES may be awarded under Lord Campbell's act as a punishment of the offender for benefit of the community and as a restraint to transgressor, evidence that a train was run over a trestle at fifty miles an hour when schedule time was thirty-three may support punitive damages.

8. CHARGE—APPEAL.—An instruction upon an issue as to which there is no evidence is not reversible error unless the attention of the Court be called to it.

9. NEGLIGENCE—PRESUMPTIONS.—A RAILROAD COMPANY is not an insurer of the lives of its passengers, but is required to exercise the highest degree of reasonable care for their safety, and injury to a passenger is *prima facie* evidence of negligence. The company is liable for injuries to passenger caused by unsound or rotten timber in a trestle or any defect therein.

10. CHARGE—RAILROAD—PASS.—Under facts here charge if pass on which the injured was carried was issued in pursuance of telegrams in evidence, they showed that the pass was issued without pecuniary or valuable consideration, would be a charge on the facts.

11. JURY.—After considering a case for a night and a part of two days, jury is called into Court by Judge and urged to agree because much time had been consumed in the consideration of the case; it was important to reach a verdict because of the cost to the public and the litigants; some jury must decide the case sooner or later; it would be possible for the Court to keep the jury on the consideration of the case for a great while; if jury have agreed that plaintiff should have a verdict and only differed in amount, they should harmonize their opinions unless such difference is based on conscientious convictions. *Held,* not error and not duty of Judge to discharge the jury at that time.

12. NEGLIGENCE—EVIDENCE.—THAT A RAILROAD COMPANY furnished its road and ran its trains and inspected its trestles in the customary manner which is generaly found and believed to be safe and prudent is not the test of negligence, but such evidence should go to the jury, with the other evidence on question of due care.

Before KLUGH, J., Abbeville, special May Term, 1905. Affirmed.

Action by W. F. Nickles, administrator, against Seaboard Air Line Railway, on the following complaint:

"The plaintiff above named, by his attorney, Wm. N. Graydon, complaining of the above named defendant, alleges:

"I. That the plaintiff is a resident and citizen of this county and State.

"II. That the defendant is a corporation duly chartered under the laws of the State of South Carolina, and is now, and was at the time hereinafter mentioned, engaged in business as a common carrier of freight and passengers, and was and is operating the Georgia, Carolina and Northern Railroad, running from Monroe, North Carolina, through the State of South Carolina, by way of Catawba, Chester, Clinton, Greenwood and Abbeville, and to Atlanta, by way of Elberton, Athens and Winder.

"III. That on the 9th day of September, 1904, the plaintiff's intestate, Rhoda B. Black, was a passenger on one of defendant's regular passenger trains, and was on her way to Elberton, in the State of Georgia.

"IV. That while the train on which plaintiff was a passenger was crossing a high trestle on said road, in the county of York, in this State, and near a station on said road called Catawba, she was killed by the gross carelessness and negligence of said defendant, said trestle giving way and precipitating said train down an embankment, instantly killing said Rhoda B. Black by breaking her neck and inflicting other and fatal injuries upon her.

"V. That said defendant was grossly negligent and careless in running said train over said trestle at a dangerous and unusual rate of speed, in the night time, and was further grossly negligent, reckless and careless, in that said trestle was dangerous and unsafe, some of the timbers thereof being rotten and unsound, a great many bolts on said trestle not having any nuts or taps on them, and the same being negligently and carelessly built, and not of sufficient strength to stand the strain of a heavy engine and train of cars, such as was then being used, and in the manner that said train was being run, by which gross negligence, recklessness and carelessness, and careless and negligent conduct, said Rhoda B. Black was then and there instantly killed.

"VI. That the direct cause of the death of the said Rhoda B. Black was the negligent, careless and improper manner in which said train was being run, and the grossly careless, reckless and unsafe way in which said trestle was allowed to be by said defendant.

"VII. That the said Rhoda B. Black left surviving her, her husband, T. F. Black, and her father, Joseph Bunk, her mother, Mrs. Joseph Bunk, and her sister, Annie Frazier, but left no children, having been married only four or five months, the above named parties being her only heirs at law and distributees.

"VIII. That the said Rhoda B. Black died intestate, in the county of York, in this State, and thereafter, on the 7th day of October, 1904, letters of administration upon the personal estate, goods, rights and credits, which were of the said Rhoda B. Black, was duly issued and granted to this plaintiff by the probate court of York County, South Carolina, and this plaintiff duly qualified as such administrator and entered upon the discharge of the duties of said office, and is still acting as such administrator.

"IX. That this action is brought for the use and benefit of T. F. Black, the husband of the said Rhoda B. Black, in accordance with the terms of the statutes in such case made and provided.

"X. That by the carelessness, negligence, and grossly negligent, reckless and careless conduct of the defendant in failing to carry safely the said Rhoda B. Black, and its careless, negligent, reckless and gross failure to do its duty in the premises, the said T. F. Black, the husband of the said Rhoda B. Black, has been damaged by the death of his said wife, in the sum of $50,000.

"Wherefore, the plaintiff demands judgment against the defendant for the sum of $50,000, to be paid to him as administrator as aforesaid for the use and benefit of the said husband of the said Rhoda B. Black, deceased, and for the costs and disbursements of this action."

Within the time allowed by law, the defendant served its answer, of which the following is a copy:

"The defendant above named, answering the complaint herein, says:

"I. That it has no knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraphs one, seven, eight and nine of the said complaint.

"II. In answer to the allegations contained in paragraph two of the complaint, the defendant admits that it is a corporation duly chartered, and is now and was at the times hereinafter mentioned, engaged in business as a common carrier of freight and passengers, and was and is operating the Georgia, Carolina & Northern Railroad, running from Monroe, North Carolina, through the State of South Carolina, by way of Catawba, Chester, Clinton, Greenwood and Abbeville, and to Atlanta, by way of Elberton, Athens and Winder.

"III. That the defendant admits that the said Rhoda B. Black was riding on one of defendant's passenger trains on the 9th of September, 1904, but specifically denies that the said Rhoda B. Black was riding on said passenger train as a passenger for hire.

"IV. That the defendant denies the allegations contained in paragraphs four, five, six and ten.

"Further answering said complaint, and for a defense thereto, this defendant alleges:

"That at the time the said Rhoda B. Black came to her death, she was riding upon what is commonly known as a free pass or ticket, and had not paid, or promised to pay to this defendant any sum of money whatsoever, or any other valuable consideration for her transportation upon said train, but was being tansported entirely free of charge by the defendant. That the said Rhoda B. Black had agreed with the defendant, in consideration of her being carried and transported free of charge, that the defendant should not, under any circumstances, be liable to her for any injury or damage received by her while she was being so transported. That

this defendant pleads the benefit of this contract, between the said Rhoda B. Black and the defendant, by which she was being transported free of charge at the time she met her death, and by which the defendant should not be liable for any injury or damage received by her while being so transported.

"Wherefore, the defendant demands judgment that the complaint herein be dismissed with costs."

From judgment for plaintiff, defendant appeals upon the following exceptions:

"I. Because his Honor erred in allowing testimony in this action as to injuries received by T. F. Black, the husband of plaintiff's intestate, such testimony being irrelevant and immaterial to the issues involved herein, and prejudicial to the defendant.

"II. Because his Honor erred in allowing witness, T. F. Black, over the objection of the defendant, to testify to the fact that another train of cars ran into and upon the wreck of the train upon which plaintff's intestate was traveling, it not being alleged in the complaint, nor claimed in the testimony that such second train contributed in any manner to the injuries received by plaintiff's intestate—such testimony was, therefore, irrelevant to the issues involved in this litigation, and the same was prejudicial to the defendant.

"III. Because his Honor erred in allowing the witness, Black, over the objection of the defendant, to testify that he would not have left Ohio, and would not have gone to Elberton, Ga., to testify in the case for the defendant, unless the defendant had agreed to give him transportation for his wife in order that she might accompany him. It is submitted that such testimony was incompetent, for the reason that the contract by which he went to Elberton, Ga., was contained in the written telegrams, and was further incompetent for the reason that it contradicted the written evidence of the contract, and was a matter of opinion and speculative, and not as to the facts of the case.

"IV. Because his Honor erred in refusing to allow the defendant to ask the witness, Nickles, on cross-examination whether he had taken the oath of office as administrator as required by law, and erred in refusing to allow the witness to answer such question. It is submitted, that the plaintiff having alleged that Nickles had qualified as administrator and the same having been specifically denied, it was competent for the defendant to show that he had never qualified as such administrator as required by law.

"It is submitted that his Honor erred in holding that such testimony would contradict the record of the probate court of York County, when he should have held that there was nothing in the record showing that the said Nickles had ever qualified as such administrator except a certificate of the judge of probate, which was no part of the record, and which was not binding on the defendant.

"V. Because his Honor erred in refusing to allow the witness, Hamrick, to give in evdence his opinion as to what caused the wreck of the train on which plaintiff's intestate was an alleged passenger, and erred in holding and ruling as follows: 'He could do that, if this jury were charged with the duty of determining what did cause the wreck. They are not charged with that; then it is for them to say whether the matters included within the issue as submitted to them caused the wreck. For the witness to go off into other speculations about the cause would not only not be relevant, but might be misleading to the jury.'

"a. It is submitted that after the witness visited the scene of the wreck, immediately after it happened, and after having examined the piles, timbers, and all parts of the trestle, and after having observed the conditions and surroundings, taken in connection with the facts that he had superintended the construction and periodically examined all parts of the trestle, to all of which facts he had testified before the jury, it was competent for him to give an opinion as to the cause of the wreck, to the benefit of which opinion the defendant was entitled, and it is further submitted that such testimony

was relevant, for the reason that the defendant was entitled to show, as rebutting the allegations of negligence, gross negligence and recklessness, that the wreck occurred from causes other than these and from causes beyond the control of the defendant.

"b. It is further submitted that the testimony showed that the witness was the superintendent of the defendant in the building of its trestle, and in keeping the same in repair, and that it further showed that he had a peculiar knowledge as to such matters, and, therefore, showed that he was an expert, and having visited the scene of the wreck, immediately after it occurred, and having examined the piles, timbers and all parts of the trestle, and having observed the conditions and surroundings, and taken in connection with the facts that he had superintended the construction and periodically examined all parts of trestle, having testified to all these facts before the jury, it was competent for him to give an opinion as to the cause of the wreck, to the benefit of which opinion the defendant was entitled, and it is further submitted that such testimony was relevant for the reason that the defendant was entitled to show as rebutting the allegations of negligence, gross negligence, and recklessness, that the wreck occurred from causes other than these, and from causes beyond the control of the defendant, and his Honor erred in not so holding and ruling.

"VI. Because his Honor erred in not allowing the witness, Hamrick, to testify that in his opinion the wreck was not caused by a lack of bolts, or lack of nuts or taps in the trestle.

"a. It is submitted that after the witness had visited the scene of the wreck, immediately after it happened, and after having examined the piles, timbers, and all parts of trestle, and after having observed the conditions and surroundings, taken in connection with the facts that he had superintended the construction and periodically examined all parts of the trestle, to all of which facts he had testified, it was competent for him to give an opinion as to the cause of the wreck, to

the benefit of which opinion the defendant was entitled, and it is further submitted that such testimony was relevant for the reason that the defendant was entitled to show as rebutting the allegations of negligence, gross negligence, and recklessness, that the wreck occurred from causes other than these, and from causes beyond the control of the defendant.

"b. It is further submitted that the testimony showed that the witness was the superintendent of the defendant in the bulding of its trestles, and in keeping the same in repair, and that it further showed that he had a peculiar knowledge as to such matters, and, therefore, showed that he was an expert, and having visited the scene of the wreck, immediately after it occurred, and having examined the piles, timbers, and all parts of the trestle, and having observed the conditions and surroundings, and taken in connection with the facts that he had superintended the construction and periodically examined all parts of this trestle, to all of which he had testified, it was competent for him to give an opinion as to the cause of the wreck, to the benefit of which opinion the defendant was entitled, and it is further submitted that such testimony was relevant for the reason that the defendant was entitled to show as rebuting the allegations of negligence, gross negligence, and recklessness, that the wreck occurred from causes other than these, and from causes beyond the control of the defendant, and his Honor erred in not so holding and ruling.

"VII. Because his Honor erred in not striking out the following question and answer of the witness, Hamrick, brought out on cross-examination: 'Q. Was there any watchman employed there to look after this trestle? A. No, sir.' The said question and answer were not relevant to any allegation in the pleadings, and were not involved, necessarily or incidentally, in any issue raised thereby. Such testimony was, therefore, irrelevant, and was prejudicial to the defendant, in allowing the plaintiff to prove alleged acts of negligence, of which defendant had not been advised, and to which it was not prepared to reply.

"VIII. Because his Honor erred in refusing to allow witness, J. L. Davidson, to give his opinion as to whether the wreck in this case was caused by rotten timber or defective construction of the trestle, and erred in holding and ruling as follows: 'The general rule is, then, that such opinions are competent in those cases where, after a personal observation, a description without an opinion would convey an imperfect idea. It seems to me the ruling this morning in view of that general principle is wrong. The witness may testify to a condition of things prevailing, and it seems to me that the description of what the witness saw from his personal observation sufficiently enables the jury to form an opinion without the necessity of the witness expressing an opinion himself, so that I will reverse the ruling made this morning.'

"a. It is submitted that the witness having visited the scene of the wreck, immediately after it occurred, examined the piles, timbers, and all parts of the trestle, and after having observed the conditions and surroundings, having testified to all these matters, was entitled to give in evidence his opinion as to whether the wreck was caused by rotten timbers or defective construction of the trestle, to which opinion the defendant was entitled in this case.

"b. It is further submitted that the testimony shows that witness was an expert in such matters, being general superintendent of another railroad company, having had many years of experience in railroad work, and after having visited the scene of the wreck, and examined the piles, timbers, and all parts of the trestle, and after having observed the conditions and surroundings, and after having testified to the facts before the jury, it was competent for him to give his opinion as to whether or not the wreck in this case was caused by rotten timbers or defective construction of the trestle.

"IX. Because his Honor erred in striking out of the testimony so much of the testimony of the witness, Hamrick, as contained his opinion as to whether the wreck of the train

on which plaintiff's intestate was riding was caused by rotten timbers or defective construction of the trestle, and erred in holding and ruling as follows: 'I will have that stricken out, and will instruct the jury now that while you will take every fact testified to as to the condition of things, when a witness says in his opinion the catastrophe was not caused so and so, that opinion is not evidence for you to consider. You take the facts as he describes them and determine for yourselves from these facts not only whether the accident or catastrophe could have been produced by the alleged cause, but whether, as a matter of fact, it was produced by the alleged cause.'

"a. It is submitted that after the witness had visited the scene of the wreck, immediately after it happened, and after having examined the timbers, piles, and all parts of the trestle, and after having observed the conditions and surroundings, taken in connection with the facts that he had superintended the construction and periodically examined all parts of the trestle, having testified to all the facts, it was competent for him to give an opinion as to the cause of the wreck, to the benefit of which opinion the defendant was entitled, and it is further submitted that such testimony was relevant for the reason that the defendant was entitled to show, as rebutting the allegations of negligence, gross negligence, and recklessness, that the wreck occurred from causes other than these, and from causes beyond the control of the defendant.

"It is further submitted that the testimony showed that the witness was the superintendent of the defendant in the building of its trestles, and in keeping the same in repair, and that it further showed that he had a peculiar knowledge as to such matters, and, therefore, showed that he was an expert, and having visited the scene of the wreck immediately after it occurred, and having examined the piles, timbers, and all parts of the trestle, and having observed the conditions and surroundings, taken in connection with the facts that he had superintended the construction and periodically examined all parts of this trestle, having testified to all the

facts, it was competent for him to give an opinion as to the cause of the wreck, to the benefit of which opinion the defendant was entitled, and it is further submitted that such testimony was relevant for the reason that the defendant was entitled to show as rebutting the allegations of negligence, gross negligence, and recklesness, that the wreck occurred from causes other than these, and from causes beyond the control of the defendant, and his Honor erred in not so holding and ruling.

"X. Because his Honor erred in allowing plaintiff's counsel to ask the witness, Davis, on cross-examination, whether he had been settled with for injuries received in this wreck, and erred in allowing said witness to answer said question, over the objection of the defendant, and erred in not striking out such testmony on the motion of the defendant, when it is submitted that such testimony was irrelevant and incompetent for the reason that a party may buy his peace, or compromise claims against him, without admitting his liability, and such facts cannot be used as evidence, either between parties or between one of them and other parties.

"XI. Because his Honor erred in allowing the witness, T. F. Black, over the objection of the defendant, to testify in reply that the witness, Davis, did not say anything to indicate whether he had sent a message concerning the wreck to an agent of the defendant or not. It is submitted that such testimony was not in reply to any testimony offered by the defendant, and the witness Davis not having been asked with regard to such alleged conversation, it was incompetent to contradict him in this manner, and the testimony was pure hearsay.

"XII. Because his Honor erred in charging and instructing the jury that a railroad company cannot make a valid binding contract with a free or gratuitous passenger to relieve itself from more than ordinary negligence, and cannot make such contract to relieve itself from injuries received by such passenger on account of gross negligence; whereas, it is submitted that a railroad company may make a valid

8—74

contract with such passenger which will relieve it of liability on account of all injuries resulting from negligence, or gross negligence, and all other acts except such as are wilful or wanton in their nature.

"XIII. Because his Honor erred in charging the jury that it was incumbent upon the defendant to satisfy the jury by the preponderance of the evidence that Mrs. Black, plaintiff's intestate, was riding on a free pass; whereas, he should have charged the jury that if plaintiff sought to hold the defendant liable for mere ordinary negligence, it was incumbent on him to prove by the preponderance of the evidence that his intestate was a passenger for hire, otherwise under the law of this State, the defendant would have been liable only for acts of gross negligence, or wilful or wanton acts resulting in injury.

"XIV. Because his Honor erred in charging the jury as follows: 'Then, if you find the railroad company not only caused her death by negligence and became liable, but that it caused her death by its recklessness, then you may award, in addition to damages by way of compensation, also damages by way of punishment, to make an example of the railroad company, punitive damages or exemplary damages, as they are sometimes called. A railroad company is liable for punitive or exemplary damages where it is guilty of wilful or wanton or malicious or reckless conduct. In this case there is no question of wantonness or wilfulness or maliciousness involved, but the allegation of recklessness is made, and if you find that the railorad company caused the death of Mrs. Rhoda B. Black by its recklessness, in the manner specified in the complaint, then the railroad company may be held liable not only for actual damages, but such damages in addition to that as, by way of punishment, may deter this railroad company from similar acts of recklessness hereafter, and may also by way of example, of this railroad company, deter other railroads from similar recklessness.'

"a. The error consists in this: punitive damages can be awarded to a plaintiff only in vindication of the private right which has been wilfully, wantonly or recklessly invaded, and in such an amount as will compensate or satisfy the plaintiff for the wilfulness or wantonness or recklesness with which his private rights are invaded, and in addition thereto operate to deter the wrongdoer and as a warning to others, but such damages can never be awarded in a civil action to a litigant as a fine or penalty, or as a punishment for a public wrong.

"b. Punitive damages cannot be awarded against a wrong-doer in such an amount as to deter other wrongdoers, or other defendants, from committing like acts, but only in such an amount as will deter the wrongdoer, and as will operate as a warning to others.   It is submitted that a much less amount than would deter other railroads might operate as a deterring punishment to the wrongdoer in this case, ana as a warning to others.   The charge was, therefore, erroneous and prejudicial to the defendant in that the jury were thus instructed to award punitive damages in a greater amount than they might otherwise have considered sufficient under the law, had it been properly given to them.

."c. Plaintiff's cause of action being for the wrongful death of another, his cause of action is statutory, and he can have no greater remedy, and no greater measure of relief, than that given by the statute on which he bases his action, and it is submitted under the statute in this State allowing actions on account of the wrongful homicide of another, damages including exemplary or punitive damages, can be awarded to plaintiff only in such an amount as they may think proportioned to the injury resulting from such death to the parties respectively for whom and for whose benefit such action shall be brought.

"Sub-d. 1. Therefore, in an action under Lord Campbell's act in this State, punitive damages can be awarded, in a proper case, only so far as such damages are in vindication of the rights of the party for whose benefit the action is

brought—for the malicious, wilful, wanton or reckless invasion of such rights.

"Sub-d. 2. But such damages can never be awarded under such statute as a punishment to the wrongdoer for his wrong.

"Sub-d. 3. Nor can such damages be awarded under the statute in an amount sufficient to deter others.

"XV. Because his Honor erred in submitting to the jury the question as to whether plaintiff was entitled to punitive damages, when there was absolutely no testimony tending to prove any reckless acts on the part of the defendant.

"XVI. Because his Honor erred in refusing to charge the jury, at the request of the defendant, that plaintiff could not contradict the terms of the agreement on the part of Mrs. Rhoda B. Black, indorsed on the pass or ticket on which she was riding. It is submitted that the same having been signed and accepted by her, and the agreement indorsed thereon stating the consideration for the same, it was not competent for plaintiff to dispute the terms thereof, nor to show a different consideration for the said pass or ticket; in the absence of allegations of fraud or mistake.

"XVII. Because his Honor erred in refusing to charge the eleventh request of the defendant, which was as follows: 'That if the jury finds in this case that the pass upon which plaintiff's intestate was riding was issued pursuant to the telegrams offered in evidence by the plaintiff, and that such telegrams were sent and delivered in the order named by T. F. Black, then the telegrams failed to show that the said pass was issued upon any pecuniary or other valuable consideration moving to the defendant. It is submitted that it was for the Court to construe the telegrams in this case, the same being written instructions; and it is further submitted that if they be taken as sent in the order as stated by T. F. Black, they fail to show that the pass issued to Mrs. Rhoda B. Black was sent pursuant to a contract, but on the other hand, show that the pass was sent to Mrs. Rhoda B. Black as a gratuity. His Honor should have charged

this request, and erred in holding that it involved a charge on the facts.

"XVIII. Because his Honor erred in refusing to charge the twelfth request of the defendant, which is as follows: 'If railway companies exercise their functions in the same way with prudent railway companies generally, and furnish their road and run their trains in the customary manner which is generally found and believed to be safe and prudent, they do all that is incumbent upon them, and if the jury in this case find that the defendant constructed, maintained and inspected its trestle in the manner generally found and believed by prudent railways to be safe, and that it was operating its train in the customary manner which is generally found and believed by prudent railway companies to be safe, then the jury must find for the defendant.'

"It is submitted that such charge embodies a sound proposition of law and his Honor erred in refusing to charge it.

"XIX. Because his Honor erred in charging the plaintiff's seventh request to charge, which is as follows: 'That if the jury find from the testimony that the timbers, or any of them, out of which such trestle was built were unsound or rotten, and that such wreck was caused by reason of said unsound or rotten timbers being in said trestle, then the jury must find a verdict for the plaintiff.' It is submitted that such charge was erroneous for the reason that it made the defendant an insurer against all accidents caused by defects, whether the same could have been known by the defendant by the use of the highest degree of care compatible with its business or not, and, therefore, made the defendant an insurer against latent defects of which it had no knowledge, and of which it could not have known by the use of that degree of care required of it under the circumstances.

"XX. Because his Honor erred in charging the sixth request of the plaintiff, which is as follows: 'That it is the duty of the defendant to keep its road, its roadbed and trestle in a safe and sound condition for the passage of its train

of cars, and if the jury find from the testimony that the trestle was not sound and well built, and not of sufficient strength to stand the strain of an engine and cars such as was being used on that occasion, and should further find that the defective trestle caused said wreck which resulted in the death of Rhoda B. Black, then the jury must find a verdict in favor of the plaintiff.'

"The error consists in this: that in so charging his Honor made the railroad company an absolute insurer of the safety of its roadbed, track and trestle; whereas, it is only incumbent on railroad companies, with reference to the carriage of passengers, to use the highest degree of practical care in the construction and maintenance of their roadbed, track and trestle, and in the running and management of their trains on the same. It is further submitted that the charge of his Honor made the defendant an insurer against latent defects in its roadbed, track and trestle, whether the same could have been discovered by it by the use of the highest degree of practical care in the construction and maintenance of its roadbed, track and trestle, or not; whereas, defendant was not responsible for such defects.

"XXI. Because his Honor erred in charging the eighth request of the plaintiff, which is as follows: 'The law, in tenderness to human life and limb, holds railroad companies liable for the slightest negligence and compels them to repel by satisfactory proof every imputation of such negligence. When common carriers undertake to convey passengers by the powerful but dangerous agency of steam, public policy and safety require that they be held to the greatest possible care and diligence. Any negligence or default in such case, which causes the injury or death of a passenger, will make such carrier liable.'

"The error consists in this: that the charge of his Honor to the jury cast the burden of proof upon the defendant to satisfy the jury that it had not been negligent whenever, and in such particulars as, the plaintiff charged that it had been negligent. The purport of the charge was that all

that was necessary on the part of the plaintiff was to charge or impute negligence to the defendant, and it then became the duty of the defendant by satisfactory proof to repel such charge; whereas, the correct rule is that plaintiff should have been required to establish the acts of negligence alleged in his complaint by the preponderance of the testimony, and all that the defendant was required to do in rebutting such allegations was to equally balance the weight of plaintiff's testimony as to such points.

"It is further submitted that, in any event, the defendant was not required to repel by satisfactory proof any charge of negligence until some testimony had been offered going to prove such act of negligence, and that the charge was in this respect erroneous.

"XXII. Because his Honor erred in his second charge to the jury, when they had been recalled by him after having had the case under consideration for a night and a part of two days, and having reported that they could not agree, in impressing upon the jury the importance of agreeing upon a verdict, and suggesting as reasons to them why they should do so:

"a. The time that had been consumed in the hearing and argument of the case, five days practically.

"b. The great expense of labor and money to the litigants.

"c. The great expense to the public, and in the same connection reminding the jury of the fact that it took public money to run the Court.

"It is respectfully submitted that these were improper reasons or inducements suggested to the jury why they should agree upon a verdict, and such reasons and inducements had a tendency to make them agree upon a verdict whether it met with their approval or not, and had a tendency to cause them to agree upon a verdict simply to end the case, whether the same in their view was in strict accordance with the law and evidence or not.

"Because it was error on the part of the Circuit Judge
to make any other charge or remarks to the jury in reference
to the case when they had repeatedly informed the Court
that they could not agree, and when they had reported to
the Court in response to questions by the trial Judge that
they did not desire any further instructions as to the law,
and they did not wish any of the testimony read to them.
It is submitted that in view of these facts the jury were
improperly coerced into finding a verdict in this case as
shown by the record.

"It is further submitted that the province of the trial
Judge in the trial of a law case under the Constitution of
this State is simply to declare the law of the case, and that
a trial Judge has no right to charge, but is forbidden from
charging, the jury with respect to matters of fact, or with
respect to matters which might induce the jury to render
a verdict where otherwise they would not have done so.
The charge of his Honor, therefore, as stated above, was
contrary to the provisions of the Constitution, in that his
Honor charged the jury with respect to matters other than
the strict law of the case.

"XXIII. Because his Honor erred in suggesting to the
jury that if they had agreed that the plaintiff should recover,
but differed as to the amount he should recover, then their
labors ought to come to an early conclusion, thereby sug-
gesting to the jury that in fixing the amount of the verdict
they were not bound by the same rules that they would be in
arriving at a conclusion as to whether or not the verdict
should be for the plaintiff or defendant; whereas, his Honor
should have charged the jury that it was none the less their
duty to fix the amount of the verdict according to the law
and evidence, than to determine from the law and evidence
as to whether the verdict should be for the plaintiff or de-
fendant.

"It is further submitted that the charge of his Honor in
this regard suggested to the jury the propriety of rendering

a quotient verdict, and that his charge was in this respect erroneous.

"It is submitted further that under the Constitution and laws of this State in a case of this kind his Honor is forbidden to charge the jury with respect to any matter except the law of the case, and, therefore, any suggestions from the Court to the jury as an inducement to them to arrive at a verdict was erroneous.

"XXIV. Because his Honor erred in further suggesting to the jury that if they were all of the opinion that a verdict ought to be rendered on one side or the other, they ought to arrive at some common ground and bring that in as their verdict, and erred in reiterating and impressing upon the jury the great importance of their arriving at a verdict in the case, giving such suggestion more prominence in his second charge to the jury than the importance of arriving at a proper verdict.

"It is submitted that his Honor thereby suggested to the jury that it would be proper for them to compromise their differences, and to bring a quotient verdict; whereas, he should have charged the jury that in arriving at the amount of their verdict they should be guided by the strict rules of law and evidence as much so as in arriving at the conclusion as to whether the verdict should be for the plaintiff or the defendant, and should charge the jury that in determining the amount of their verdict they should be governed by the same conscientious motives by which they were governed in determining as to whether the verdict should be for the plaintiff or for the defendant.

"XXV. Because his Honor erred in reiterating to the jury, in his second charge to them, the importance of agreeing upon a verdict because of the great expense to the litigants and public in trying the case, and in suggesting to them the propriety and practicability and necessity of their agreeing upon a compromise verdict and harmonizing their views, and in reminding the jury of the possibilty of the Court to keep them in consideration of the case for a long time.

"It is submitted that after the jury had been charged with the case for a night and a part of two days, and had repeatedly reported to the sheriff their inability to agree, and after they had informed the Court in response to questions that they did not desire to be charged further as to the law or to have the testimony read to them, it was improper to send them back to the jury room to further consider the said case with the suggestions above set forth, such charge and proceeding on the part of the Court amounted to an improper coercion of the jury in reaching a verdict.

"It is further submitted that the jury should have rendered their verdict, if at all, according to the strict law and evidence of the case, and in endeavoring to arrive at a proper verdict it was improper for them to consider the expense to the litigants or to the public in the trial of the case, and his Honor erred in suggesting these matters to the jury as an inducement to them to agree.

"It is further submitted that under the Constitution and laws of this State a trial Judge is forbidden from charging the jury with respect to any matters except the strict law of the case, and that, therefore, when his Honor made the above suggestions to the jury as an inducement to them to arrive at a verdict, he improperly invaded the province of the jury and committed error.

"XXVI. Because his Honor erred in excluding the testimony of witness, J. R. Hamrick, and erred in striking out his testimony, giving his opinion as to whether or not the wreck of the train was caused from rotten or unsound timber, or from improper construction of the trestle. The defendant was entitled to have this opinion given, because the testimony showed that the witness had ordered the timbers for the construction of the trestle, inspected them, planned the trestle, had had general oversight of its construction, and had given it close examination on an average of about once a month from the time it was constructed to the date of the accident, had visited the scene of the accident a few hours after it happened, had examined the broken part of the trestle

closely, with a view of ascertaining the cause of the wreck, a short time after it occurred, had supervised the removal of the debris, and reconstructed the portion of the trestle which had been injured; and the witness had also related to the jury all the particulars of his knowledge of the trestle above before and after the accident. It was, therefore, competent for him, after testifying to all of these facts, to give his opinion as to whether or not the wreck of the train was caused from defective construction or rotten timbers in the trestle, even if he were not an expert.

"It was also competent for this witness, Hamrick, to give his opinion because he was an expert. His testimony showed that he had been in the railroad business, having special charge of the bridges and trestles, for many years; in fact, that had been his life work, he necessarily having constructed and supervised the construction of many trestles, and having rebuilt and repaired many bridges, and being continually in the business of constructing and supervising and repairing trestles and bridges. It is submitted that it was competent for the witness to testify what in his opinion caused the wreck, and it was competent for him under the circumstances, after having testified to all of the facts, to state whether or not in his opinion the wreck was caused from improper construction of the trestle, or from rotten timbers in the trestle. It is competent for him to give his opinion as to whether the wreck of the train was caused by some certain causes and to exclude some one supposed cause."

*Messrs. J. L. Glenn* and *W. P. Greene,* for appellant. *Mr. Greene* cites: *Witness may testify as to injuries received by him:* 55 S. C., 568. *Whether administrator took oath of office may be shown outside of record:* Code, 1902, 2517. *Witness having given facts as to construction of trestle, could give opinion of cause of wreck:* 72 S. C., 346; 59 S. C., 314; 57 S. C., 445; 58 S. C., 247; 61 S. C., 329; 72 S. C., 256. *Compromising with others injured in same wreck is incompetent:* 56 S. C., 96; 4 Conn., 142; Wig. on

Ev., sec. 1061. *Railroad company may contract against liability for negligence in free pass:* 5 L. R. A., 846; 48 L. E. U. S., 513; 49 L. E. U. S., 742; 2 McM. L., 368. *Not necessary to prove that deceased was a free passenger by preponderance of evidence:* 70 S. C., 211, 522. *Terms of pass cannot be contradicted:* 53 S. C., 486; 1 Green. Ev., secs. 275, 36, 285, 304; 1 McC., 516. *Pass issued after closing contract here is without consideration:* 6 Ency., 690, sub. A; 2 Conn., 404; 44 Am. Dec., 649. *For what purposes punitive damages may be awarded:* 65 S. C., 42; 12 Ency., 8. *Second charge to jury amounts to legal coercion:* 81 Ala., 335; 11 How. Pr., 261; 16 L. R. A., 643; 81 Ind., 10; 17 Kas., 462; 41 L. R. A., 648; 10 L. R. A., 89.

*Mr. Wm. N. Graydon,* contra, cites: *Admission of irrelevant evidence is within discretion of trial Judge:* 51 S. C., 480; 43 S. C., 381; 48 S. C., 136; 60 S. C., 67; 52 S. C., 371; 72 S. C., 350. *Consideration of contract may be shown by parol:* Green. on Ev., sec. 304; 26 S. C., 304; 2 Hill, 404. *Judgment of court of probate cannot be attacked by parol:* 60 S. C., 401; 38 S. C., 41; 6 Rich. Eq., 380; 41 S. C., 1. *Opinions of witnesses as to what caused wreck properly excluded:* Green. on Ev., sec. 440; 59 S. C., 318; 15 S. C., 403; 20 S. C., 441; 32 S. C., 392; 40 S. C., 328; 63 S. C., 572. *Cross-examination as to compromise for injuries proper:* 65 S. C., 247; 56 S. C., 104; 1 Green. Ev., 192; 53 S. C., 80. *Railroad company cannot relieve itself of liability for negligence by contract:* Con., art. IX., sec. 3; 2 Rich., 286; 9 Rich., 202; 26 S. C., 258; 55 S. C., 152; 95 U. S., 655; 84 U. S., 634; 19 Ohio St., 1; 192 U. S., 440. *When punitive damages may be awarded:* 13 Cyc., 106; 51 S. C., 303; Code, 1902, 2852; 52 S. C., 344; 34 S. C., 311. *Instruction on point as to which there is no evidence is not error unless attention of trial Court be called to it:* 22 S. C., 484; 72 S. C., 361. *Judge should say in charge if plaintiff may have punitive damages and not on motion for nonsuit:* 35 S. C., 493. *The usual customary*

·*way of doing things is not test of negligence:* 61 S. C., 489. *Injury of passenger is prima facia evidence of negligence:* 9 Rich., 84; 55 S. C., 389; Hughes on Ins. to Juries, sec. 550; 54 S. C., 234. *Second charge to jury was not error:* 54 S. C., 234; Hughes on Ins. to Juries, sec. 38; 44 Neb., 191; 155 U. S., 117; 20 Ky. L. R., 1021.

April 12, 1906. The opinion of the Court was delivered by

Mr. Chief Justice Pope. This is an action brought in the Court of Common Pleas of Abbeville, by the plaintiff Nickles, as the administrator of the estate of Rhoda B. Black, deceased, for the uses and benefit of T. F. Black, the husband of the said Rhoda B. Black, in accordance with the statute of this State, for damages amounting to $50,000. The complaint sets forth all facts and circumstances of the death of Mrs. Black. The answer of the defendant denied its liability. The report should set forth the case, the complaint and the amended answer (omitting plaintiff's demurrer to a part of the answer, it having been overruled by the Circuit Judge and no appeal being taken therefrom). The case came on to be tried by his Honor, Judge Klugh, and a jury. The verdict for the plaintiff was for $8,000. After judgment thereon, the defendant appealed upon twenty-six grounds, which should be set forth in the report of this case.

The exceptions will be classed as follows: I. 1, 2; II. 3; III. 4; IV. 5, 6, 7, 8, 9, 26; V. 10; VI. 11; VII. 12; VIII. 13; IX: 21; X. 19, 20; XI. 16; XII. 17; XIII. 14, 15; XIV. 22, 23, 24, 25; XV. 18.

Before proceeding with the examination of these exceptions the history of the case in general terms may be stated as follows: Thomas F. Black was a telegraph operator stationed at Haverhill, Ohio. His wife, the intestate, Rhoda B. Black, resided with her husband, said T. F. Black. at Haverhill, Ohio, having been married but a few months.

The defendant railway was anxious to secure his testimony in its behalf in a lawsuit pending trial at Elberton, Ga. A communication was opened by the defendant with said T. F. Black by telegraph and an agreement was reached by said Black with said defendant railway by which the said Black agreed to give his testimony at Elberton, provided some one should take his place, temporarily, as telegraph operator; that he should be paid for his services as telegraph operator while attending Court; that a ticket should be furnished to himself and wife to Elberton, Ga., from Haverhill, O. That on the 9th day of September, 1904, Black and wife were proceeding on their trip to Elberton when on the night of the said 9th of September, while as passengers on the defendant railway, while crossing a trestle at a high rate of speed, about fifty miles an hour, while thirty-three miles an hour was the schedule speed, the entire train, consisting of the engine, tender, mail car, express car, the first and second passenger coaches and the Pullman car, were precipitated from the trestle, thirty feet high, to the ground. The trestle at the southern end gave way. The plaintiff claims that the trestle gave way because improperly constructed—the timber thereof being rotten and the bolts insecurely fastened, having no taps, etc. While the defendant claims that said trestle was constructed in a thorough manner and that the said train was thrown from the track on said trestle because of the placing of a bar of iron, by an unknown person, on said trestle, thus causing the engine to be forced from the track—the damage ensuing therefrom. The defendant denies that the timbers were rotten or that there was any error of construction of the Whisonant trestle. Both sides admit that Mrs. Rhoda Black was killed in the wreck, her neck being broken. A great deal of testimony was taken on each side as to the condition of the piling upon which the trestle was constructed. We will now consider the exceptions in groups.

I. These exceptions relate to an alleged error of the Circuit Judge in permitting the witness, T. F. Black, to state

the injuries received by him in the wreck, on the ground that such testimony was irrelevant and immaterial to the issues involved herein as prejudicial to the defendant. We cannot see that this testimony was anything but descriptive of the wreck. Defendant's witnesses admitted that four persons were killed in the wreck. This witness was merely explaining the condition in which he groped about the car to find his wife's dead body, there being no lights, the same having been extinguished by the fall of the coach over the embankment.

We see no possible objection to this testimony, and so as to the second exception, which relates to the objection to Black's testimony, wherein he said a second train of cars ran into and upon the wreck of the train upon which the plaintiff's intestate was traveling. The witness having testified that his wife's neck was broken before this second train ran into them. The objected testimony had some relevancy by showing what effect this second train had upon the trestle in question. This exception is overruled.

II. This exception sets up an alleged error of the Circuit Judge in allowing the witness Black to testify that he would not have left Ohio unless the defendant railway should have extended its ticket to his wife, the intestate. Both sides admit that the intestate was granted transportation from Ohio to Elberton, Ga., over defendant's road. Both sides also admit that there was quite an animated colloquy, by telegraph, between these parties. The witness Black had refused to come as a witness unless certain conditions were complied with. He apprised the railroad of his unwillingness to leave his young wife alone in Ohio in case he came to Elberton, Ga., and it seems, therefore, that it was not at all illegal for the witness to state that he would not have come for the defendant unless his wife was furnished transportation by the defendant. This exception is, therefore, overruled.

III. This exception imputes error to the Circuit Judge in refusing to allow the defendant to ask Nickles, the plain-

tiff, on cross-examination, whether he had taken the oath of office as administrator, as required by law.

The plaintiff had alleged in his complaint that he had been appointed administrator of the estate and the defendant in its answer had virtually denied the same. When it became necessary to establish the representative character of the plaintiff, without objection the plaintiff introduced the entire record of the probate court of York County from the petition for letters of administration through every step down to and including letters of administration granted by said probate court of York County, which record was certified to under the hand and seal of the probate judge of York County. Thus the record of such probate court was introduced without objection. Therefore, it is not in the power of the defendant, by its collateral attack upon such record, to nullify the same. The probate court, while a court of limited jurisdiction, is a court of record and not an inferior court as to matters clearly within its jurisdiction. *Ex parte White*, 38 S. C., 41, 16 S. E., 286, where the foregoing is announced, and it is also held, that its grant of administration may be vacated only by direct proceeding. *Hankinson* v. *Railway Co.*, 41 S. C., 1, 19 S. E., 206, in which Chief Justice McIver held that section 2182 of the General Statutes of this State, providing that a certified copy of the letters of administration shall be sufficient evidence of appointment of such executor or administrator in any Court of this State, but that statute only supercedes a necessity of introducing the whole record of the court of probate. But in this instance the whole record had been introduced, and as long as that record stands unimpeached directly, it is improper to assail any portion in a collateral manner. This exception must be overruled.

IV. These exceptions are intended to bring in question the ruling of the Circuit Judge in excluding the opinions of witnesses Haverick and Davidson, as to what caused the wreck in which Mrs. Black was killed. These two witnesses whose opinions were sought had

both testified as to all the facts which came within their knowledge, but neither one of them was an eye-witness to the occurrence. Neither one was present when the catastrophe occurred. So if their opinion as to the cause of the same could be given it could only be given as experts. It has been held in this State that an opinion may be given by a witness as to time, distance, velocity, form, size, age, strength, heat, cold, etc. *Ward* v. *Charleston R. R. Co.,* 19 S. C., 521. So, also, as to injury to the sensibility of a woman who has had her affections trifled with. *Jones* v. *Fuller,* 19 S. C., 70. "The general rule is that a witness is not at liberty to express an opinion, but must confine himself to the statement of facts." *Jones* v. *Fuller, supra.* "The law does not look with favor upon the introduction of opinions in evidence. As a rule, witnesses are expected to testify to facts, and it is for the Court or jury to draw conclusions and form opinions upon the facts thus brought before them. Even when opinions are admitted, the ostensible purpose is to inform the jurors concerning some fact, and evidence which is sometimes received from necessity has been said to be less an opinion than a conclusion of fact." 12 A. & E. Encyclopedia of Law, 2 ed., 421.

In discussing expert evidence, the same author, at page 422, says: "The general rule as to the admission of expert evidence is that persons having technical and peculiar knowledge on certain subjects are allowed to give their opinions when the question involved is such that the jurors are incompetent to draw their own conclusions from the facts without the aid of such evidence." *State* v. *Clark,* 15 S. C., 403.

Mr. Greenleaf, in his work on Evidence, says, in vol. 1, sec. 440, says, "That in questions of science, skill or trade, or others of like kind, persons of skill, sometimes called experts, may not only testify to facts, but are permitted to give their opinions in evidence. Thus the opinions of medical men are constantly admitted as to cause of death, of disease, or the consequence of wounds, and as to the sane or insane state of a person's mind, as collected from a num-

ber of circumstances, and as to other objects of professional skill; and such opinions are admissible in evidence, though the witness founds them, not on his own personal observation, but on the case itself as proved by other witnesses."

Now, in the case at bar, the witnesses named were each asked to give his opinion as to the cause of the accident. There was testimony on the part of the plaintiff that there was a high rate of speed in running the train; that some of the piles of the trestle had rotted and gave way, thus precipitating the train to the earth, a distance of thirty feet. There was testimony of the defendant that the trestle was built of the best timber, and that there was some testimony that might lead to the conclusions that the roadbed had been tampered with which threw the engine off the track at the south end of the trestle.

Therefore, no matter what caused the injury, all these facts were fully testified to by witnesses. No reason existed why these experts should be called in to aid the jury. It became a question of hard common sense.

The question and the ruling of the Circuit Judge on the right of the witness Haverick to state his opinion as to the cause of the catastrophe was as follows: Mr. Glenn: "Will you state to the jury whether or not, in your opinion, from what you saw of this trestle and its timbers and iron rails, the whole structure and lie of the train, you saw there yourself, whether or not, in your opinion, this derailment or accident was caused by rotten timber or defective construction of this trestle?" Mr. Graydon: "I renew the objection I made this morning to that testimony." After argument, the Court ruled: "I have looked into the matter some during the recess. The extent of my examination of the question was simply to refer to Steven's Digest, and I found the rule there laid down that opinions of non-experts are now receivable in this country in all cases where, after a mere observation, *a description without an opinion would convey an inadequate* idea of what the witness testified to. The general rule is, then, that such opinions are competent in those cases

where, after a personal observation, a description without an opinion would convey an imperfect idea. It seems to me the ruling this morning, in view of that general principle, is wrong. The witness may testify to a condition of things prevailing, and it seems to me that the description of what the witness saw from his personal observation sufficiently enables the jury to form the opinion without the necessity of the witness expressing an opinion himself. So that I will reverse the ruling made this morning." Mr. Graydon: "I move that the stenographer strike out from the testimony the opinion of Mr. Haverick." The Court: "Yes, sir; will have that stricken out, and will instruct the jury now, that while you will take every fact testified to as to the condition of things, when a witness says in his opinion a catastrophe was not caused so and so, that opinion is not evidence for you to consider. You take the facts as he describes them and determine for yourselves from those facts not only whether the accident or catastrophe could have been produced by the alleged cause, but whether as a matter of fact, it was produced by the alleged cause." These exceptions are, therefore, overruled.

V. When the witness D. H. Davis testified, it was as a witness for the defendant, and he stated that he had been injured in the wreck, but was not very much injured. On the cross-examination, he was asked if he had been settled with by the railroad for his injuries and his answer was that he had. After this testimony had been elicited the defendant objected. Upon the question of the relevancy of this testimony raised by the defendant the Court held that it was relevant to the issue and that it was on cross-examination of defendant's witness.

It seems relevant to us to a certain extent at least. It was a recognition by the railroad that persons injured by the wreck were entitled to compensation therefor. This exception must be overruled.

VI. This exception relates to an alleged error of the Circuit Judge in allowing the plaintiff's witness T. F. Black,

over the objection of the defendant, to testify that Davis, who was the telegraph operator nearest to the scene of disaster, did not say anything to him concerning his allegation that he had already sent a message to the defendant company apprising them of this disaster. To a certain extent it might be said that the testimony of the witness Black was in contradiction of Davis' testimony, but be that as it may, if this was an error it was of no moment to the defendant. This exception is, therefore, overruled.

VII.-VIII. These exceptions relate to the alleged error of the Circuit Judge in his general charge to the jury, wherein he stated that the defendant railway cannot make a binding contract with a free or gratuitous passenger to relieve itself from more than ordinary negligence and cannot make such contract to relieve itself from injuries received by such passenger on account of gross negligence, it being submitted by the appellant that it can make a valid contract with such passenger which will relieve it of liability on account of all injuries resulting from negligence, or gross negligence, and all other acts except such as are wilful or wanton in their nature.

We do not think there was error in the Circuit Court as here complained of. The Constitution of this State, sec. 3, art. IX., provides: "All railroads, express, canal and other corporations engaged in transportation for hire * * * are common carriers * * *. It shall be unlawful for any such corporation to make any contract relieving it of its common law liability or limiting the same in reference to the carriage of passengers." Our Courts have so holden— *Swindler* v. *Haillard and Brooks*, 2 Rich., 286; *Baker* v. *Brinson*, 9 Rich., 202; *Wallingford & Russell* v. *Ry. Co.*, 26 S. C., 258; *Johnson* v. *Ry. Co.*, 55 S. C., 152, 32 S. E., 2. In the last named case the Court held: "A contract whereby a common carrier undertakes to secure immunity beforehand from liability from damages for injuries resulting from its negligence, or that of its servants or agents, is contrary to public policy and therefore void." The Su-

preme Court of the United States, in *Ry. Co.* v. *Stevens,* 95 U. S., 655, held: A common carrier of passengers can not lawfully stipulate for exemption from liability for personal injuries caused by the negligence of its servants where the transportation of the plaintiff in its cars although not paid for by him in money, was not a matter of charity nor of gratuity. The syllabus of this case is as follows: "A, who was the owner of a patented car-coupling, for the adoption and use of which by railway company he was negotiating, went at the request and expense of the company to a point on its road to see one of its officers in relation to the matter. A free pass was furnished by the company to carry him in its cars. During the passage, the car in which he was riding was thrown from the track by reason of the defective condition of the rails and he was injured. Held (1), That the passage was given for a consideration and that he was a passenger for hire. (2), That, being such, his acceptance of the pass did not estop him from showing that he was not subject to the terms and conditions printed on the back of the pass, exempting the company from any liability in any injury he might receive by the negligence of the agent of the company or otherwise." In the case of *Ry. Co.* v. *Lockwood,* 17 Wallace, 357, the syllabus of the case is as follows: "(1) A common carrier cannot lawfully stipulate for exemption from responsibility when such exemption is not just and reasonable in the eye of the law. (2) It is not just and reasonable in the eye of the law for a common carrier to stipulate for exemption from responsibility for the negligence of himself or his servants. (3) These rules apply both to common carriers of goods and common carriers of passengers, and with a special force to the latter. (4) They apply to the case of a drover traveling on a stock train to look after his cattle and having a free pass for that purpose. (5) Query: Whether the same rules would apply to a strictly free pass? (6) Held *arguendo:* That a common carrier does not drop his character as such merely by entering into a contract for limiting his responsi-

bility. (7) That *carefulness* and *fidelity* are *essential duties* of his employment which cannot be abdicated. (8) That these duties are essential to the public security in his servants as in himself. (9) That a failure to fulfil these duties is negligence, the distinction between 'gross' and 'ordinary' negligence being unnecessary."

These quotations from the law are intended to apply to the case at bar, to the free pass, as it is called, issued by the railway to Mrs. T. F. Black, the intestate here. The ticket was as follows:

(Face of paper):

"Seaboard Air Line Railway Exchange Ticket. Pass Mrs. T. F. Black from Elberton to Petersburg. Account Witness. Good for ONE TRIP only, until Oct. 30th, 1904, unless otherwise ordered, when countersigned by C. A. Carpenter. Sept. 6th, 1904. J. M. Barre, President and General Manager. No. A 17261."

"Countersignature C. A. Carpenter. Stop-over at Stations permitted."

(Back of paper):

"Conditions. This free ticket is not transferable, and, if presented by any other person than the individual named thereon, or if any alteration, addition or erasure is made upon it, it is forfeited, and the conductor will take it up and collect full fare.

"The person accepting this free ticket agrees that the Seaboard Air Line Railway shall not be liable, under any circumstances, whether of negligence of agents or otherwise, for any injury to the person, or for any loss or damage to the property of the passenger using the same.

"I accept the above conditions. Mrs. T. F. Black."

"This pass will not be honored unless signed in ink by the person for whom issued."

Upon comparison of the principles laid down in the cases we have just quoted with the views just presented by his Honor in his charge, we cannot hold that he has violated any rules of law as pointed out in this exception and the

thirteenth ground of appeal is governed by the same rule as hereinbefore stated. The latest decision of the Supreme Court of the United States which in the least antagonizes the views of our own Supreme Court, is that of the *Northern Pacific Ry. Co.* v. *Adams,* 192 U. S., 440. In this case it was decided that a party riding on a free pass when nothing whatever of value is paid is not entitled to recover. It was there declared by the Court that this case was distinguished from the cases of *Ry. Co.* v. *Lockwood, supra,* and *Stevens* v. *Ry., supra,* and was expressly confined to cases of ordinary negligence, and this last case was adopted by the Circuit Judge in his charge to the jury.

It is palpable to this Court that this was not a free pass, as is often the case, for in his evidence it is seen that money value or its equivalent was paid to the railroad therefor. It was a condition upon which the husband engaged in the service of its defendant railroad as a witness. It was similar to the Lockwood and Stephens cases, and was left wisely by the Circuit Judge to the jury. We must, therefore, overrule these exceptions.

IX. These exceptions relate to the charge of his Honor touching punitive damages. In 13th Cyc., 106, the author says: "The better doctrine seems to be that they (punitive damages) are usually given as a punishment to the offender, for the benefit of the community and a restraint to the transgressor." This is abundantly evident under the decisions of this Court in *Samuels* v. *Ry. Co.,* 35 S. C., 493, 14 S. E., 943; *Spellman* v. *Richmond & Danville Ry. Co.,* 35 S. C., 488, 14 S. E., 947; *Mack* v. *Ry. Co.,* 52 S. C., 344, 29 S. E., 905; *Duckett* v. *Pool,* 34 S. C., 311, 13 S. E., 541. The case for appeal also shows that there was testimony as to *recklessness* in that the schedule time for said railroad was 33 miles an hour and that in crossing the trestle in question the train was running at a speed of 50 miles an hour. If there was any error in this charge, his Honor's attention was not called thereto. *Burns* v. *Goddard,* 72 S. C., 361, where Mr. Justice Jones, speaking

for the Court, says: "Whatever may be the view elsewhere our cases support the view that an instruction upon an issue as to which there is no evidence whatever or a mistake in stating issues, is not reversible error unless the attention of the Court is called to the matter. *Vann* v. *Howle*, 44 S. C., 546, 22 S. E., 735; *Crosswell* v. *the Association*, 51 S. C., 469, 29 S. E., 236; *State* v. *Still*, 68 S. C., 38; 46 S. E., 524." This subject has been so often discussed by this Court and its views so explicitly stated that we need not linger hereon. These exceptions are overruled.

X. In construing the Judge's charge it must be construed as a whole. The Court told the jury that the injury of a passenger was *prima facie* evidence of negligence. See *Zemp* v. *Ry.*, 9 Rich., 84; *Steele* v. *Ry.*, 55 S. C., 389, 33 S. E., 509. The Circuit Judge instructed the jury that the railway company was not an insurer of the lives of its passengers but was only bound to exercise the highest degree of reasonable care for the safety of its passengers. These exceptions are overruled.

XI. This exception relates to an alleged error in his Honor in refusing to charge the jury, at the request of the defendant, that plaintiff could contradict the terms of the agreement on the part of Mrs. Rhoda B. Black as indorsed on the ticket or pass on which she was riding. Notwithstanding she has signed the same, as has been previously held by us in this case in disposing of the third exception, the request to charge did not represent the law. It was in the power of the plaintiff to show that there was something of value to defendant, as was held in the case of *Stevens* v. *Ry. Co.*, U. S., *supra*. This exception is overruled.

XII. The error attributed to the presiding Judge in this exception is his refusal to charge the eleventh request, which is as follows: "That if the jury find in this case that the pass upon which plaintiff's intestate was riding was issued pursuant to the telegrams offered in evidence by the plaintiff; and that such telegrams were sent and

delivered in order named by T. F. Black, then such telegrams fail to show that the said pass was issued upon any pecuniary or other valuable consideration moving the defendant." This charge was refused by the Judge because it would have been a charge upon facts. We agree with the Circuit Judge. Therefore, this exception is overruled.

XIII. These four exceptions relate to error alleged in the Circuit Judge, when, on the second appearance of the jury, he addressed himself to them urging the propriety of their reaching a conclusion, if according to their conscientious convictions they could do so.

In order that we may understand what transpired in the second charge of the Judge to the jury, we reproduce the same as follows: On Friday morning, May 26, the jury was called out.

"The Court: Mr. Foreman, the jury have been considering this case now for some time, and it may have developed that there are matters of law upon which the jury are disagreed and about which the Court might aid you by giving you some further instructions.

"The Foreman: It is not.

"The Court: Then it may be that there are matters of fact about which the jury are disagreed, and upon which the Court might give you some aid by having such portions of the testimony read over to you as have a bearing upon those questions of fact.

"The Foreman: It is not that.

"The Court: Then I take it that each juror understands the law of the case, and also has a clear conception of the facts of the case, and it is a matter of difference of opinion amongst you, which difference you have not yet been able to reconcile. Now, gentlemen, this jury has been charged with this case, and have been engaged with the hearing of it, and the consideration of the case after the hearing was had, for five days practically. It has been a case of considerable length and a case of considerable moment. It involves important issues, and for that reason the Court,

in the trial of the case, in the hearing of the case, restricted nobody as to time or as to any other means of arriving at a correct conclusion, and so it turns out that the case has consumed a great deal of your time, a great deal of the time of the Court, and not only has it consumed time but it has already entailed a very large expense of labor and money to these litigants, as well as to the public, because it costs the public money to run the Court. So I hope these facts will suggest to your minds the great importance of having this case ended.

"Now it has got to be ended by a jury sooner or later, and I suppose in Abbeville County no jury could be assembled which would be more competent to deal with these issues and to agree upon a verdict than the jury which now has the case. That being true, it must come with a great deal of force to you, as it does to the Court and to these parties engaged in this litigation—it must come with a great deal of force that the case ought to be ended and disposed of, and that you are the proper parties to do that.

"Now, if this jury were agreed that the defendant ought to have a verdict, that the plaintiff was not entitled to anything, there could be no delay in your writing a verdict. So I take it that that is not the case. Very well. If some of the jury think that plaintiff ought to have a verdict and others think that the plaintiff ought not to have a verdict—of course, that is one possible ground of difference to be conceived, and, as a matter of course, the Court, under the statement already made by you, that you need no further instructions upon the law, and that you have a full conception of the facts from the testimony, could not give you any aid in arriving at an agreement. It may be that you all agree that the plaintiff ought to have a verdict, but that you cannot agree, or have not as yet agreed, as to what your verdict should be. Well, if that be the case, the Court has no power, no means at its command to aid you in settling that difficulty. But if that be the case, then your labors ought to come to an early conclusion, because I take it that an

intelligent jury, seeking to arrive at a just conclusion, if you are all of the opinion that a verdict ought to be rendered on one side or the other, ought to be able to arrive at some common ground, and bring that in as your verdict.

"Now, whatever may be the ground upon which you differ, and the Court has neither the right nor the desire to know about those matters, still you understand the vast importance of having an agreement, so that the case may be finally disposed of. As I have already said, it has cost you a great deal of time and labor, because you sit here listening to a case, that requires the exertion of your intellectual faculties and energies, and as well, a strain upon physical powers; and then when you go to consider a verdict that, again, is a tax upon your energies, both of mind and body. So it has cost you a great deal of labor already, as well as a great deal of time, and probably has cost you a good deal in the fact that you are forced in rendering this service to your country, this patriotic service, in a greater or less degree to allow your private business affairs unattended to, neglected. Now, then, you ought to consider that as a very strong reason why you should get together and agree upon a verdict, and not only that, but other sources of expense that the Court has already indicated, the expense to the public, the expense to each of these litigants. I am quite sure these facts appeal to you as reasons why you ought to bend all your energies and direct all your efforts to the sole object of arriving at a verdict.

"Now, no juror is required in a civil case to sacrifice his conscientious convictions. You are all sworn to well and truly try and a verdict render, and no one of you is forced, or ought to feel constrained, to violate that oath. Each of you ought to well and truly try the case and make up your mind as to what ought to be the verdict in the case. Then, as a matter of course, each of you ought to compare his own conclusion which he has arrived at, with the opinions of his fellow-jurors, and seek to arrive at some common ground of agreement that will be your verdict. If any juror

disagrees with his fellow-jurors and it is a matter of con-
science with him, so that he would feel he has violated the
oath he has taken if he yielded the position he holds, of
course he ought not to yield that position.    But if it is not
a matter of conscience, but merely a matter of difference of
opinion, then it is your duty to harmonize your opinions.
Probably there never has been tried a case by twelve intelli-
gent men, in which there was an absolute identity of opinion
amongst all twelve of the jurors about the case, and the
very fact that intelligent minds do differ makes it inevitable
that every verdict should be not, probably, a direct expres-
sion of any man's opinion, but an expression of your harmo-
nized opinions.    You put your opinions together and com-
pare them.    Wherever they agree, why there is no necessity
for any harmonizing.    Wherever they differ, then the dif-
ference ought to be considered, and unless differences go to
the conscientious convictions of the respective jurors, then
those differences ought to be reconciled.    In one sense, every
verdict is a compromise, and I don't mean that in the sense
in which the word is generally used, and yet it is a har-
monizing of the conflict between the opinions of the jurors,
the conflicting view of the jurors; and that is what a jury
who find some difficulty in agreeing in a case ought to feel
it encumbent upon themselves to do, compare their dif-
ferences and reconcile them, if possible.

"As I have said, you have been engaged for quite a long
time in considering this case, and I feel sure that no juror
amongst you will be willing to surrender the case without
arriving at a verdict, so long as there is a probability of
your being able to agree.    I don't say possibility of an agree-
ment, because all things are possible, all things of a human
character, and I don't propose to keep you confined in the
consideration of this case until the last possibility of an
agreement is exhausted, because it would be possible for the
Court to keep you there for quite a while.    But I conceive
it to be my duty, and I cannot conceive that any of you
would differ with me in that, and I believe, therefore, you

consider it to be your duty, still to try to arrive at a verdict
in this case.    It is my duty to give you all the time necessary
to enable you to arrive at the verdict or to demonstrate the
impossibility or the extreme improbability of your ever
agreeing upon a verdict, and for that reason the Court will
give you further time to consider the case; either now or
in your further consideration of it, the Court will, of course,
be glad at all times to aid you in any way possible.    Your
comfort will be looked after so far as it is in the power of
the Court to do so, and I hope up to this time your comfort
has been administered to so that you have not suffered any
serious discomfort other than the fact that you are still kept
in the consideration of the case; and a case requiring as
much time to try as this one did, involving the issues which
it does, and comprising the vast amount of evidence that
was offered in the case, necessarily requires longer for a
jury, if it cannot at once arrive at a conclusion, to canvass
all the phases of the case, all the facts, the evidence in the
case, before it finally gives it up as something that is beyond
its power to arrive at an agreement on.

"Well, now, I think you gentlemen understand the im-
portance of your arriving at an agreement; the importance
to yourselves as jurors—I don't mean to yourselves individ-
ually, to your individual interest, but to yourselves as a jury
—and the importance to all the interests involved in the
case, which are committed to you now to be determined and
adjusted by your verdict.    So you may retire, gentlemen,
and proceed with the consideration of the case, and when you
have arrived at a verdict, if you should, or if in the further
consideration of the case, you find that you desire any aid
that the Court can give you, you will let it be known, and it
will be offered to you to the fullest extent within the power
of the Court.    You may retire."

An examination of this charge will show that there was
no request by the jury for its discharge; such being the case
the law did not require the Circuit Judge to discharge the
jury, especially as he had brought them into Court of his

own motion.    It is important that the trial of causes should be ended.    A Circuit Judge is but discharging his duty to the public, and especially to the litigants, when he urges the jury to reach a verdict, provided nothing like coercion takes place.    We, therefore, overrule these exceptions.

XIV. This exception relates to the refusal of the Circuit Judge to charge the 12th request of the defendant, which is as follows: "If railway companies exercise their functions in the same way with prudent railway companies generally, and furnish their road and run their trains in the customary manner which is generally found and believed to be safe and prudent, they do all that is incumbent upon them, and if the jury in this case find that the defendant constructed, maintained and inspected its trestle in the manner generally found and believed by prudent railways to be safe and that it was operating its trains in the customary manner which is generally found and believed by prudent railway companies to be safe, then the jury must find for the defendant."

The Circuit Judge is here requested to lay down a proposition of law which we do not regard as sound.    In *Bodie* v. *Ry. Co.,* 61 S. C., 468, 488, 39 S. E., 715, it is said: "The charge made the usual customary way of doing things a conclusive test whether due care is exercised therein; whereas, that is merely evidence which should go to the jury along with the other evidence, leaving the jury to determine from all the evidence whether due care was observed. The usual customary way may not be a negligent way, but in this the Court left the jury no discretion but to find that plaintiff was not negligent, if he was doing the work in the usual customary way.    In the case of *Bridges* v. *Ry. Co.,* 25 S. C., 24, the Circuit Court declined to charge that: 'The degree of care required of defendant is only such as is exercised by well regulated railroads over their turn-tables, and if defendant exercise such care in this case, there was no negligence,' saying that other railroads' negligence could not excuse negligence by this defendant, and that it was for

the jury to say whether there was negligence here." Our Suprme Court held, that there was no error in this.

In *Lorimore* v. *Palmer Mfg. Co.,* 60 S. C., 168, 38 S. E., 436, where a similar request was refused by the Circuit Court, this Court, through Chief Justice McIver, as its organ, overruled the exceptions to the refusal to charge. This exception is overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE JONES *concurs with the limitations expressed in the opinion of* MR. JUSTICE WOODS.

MR. JUSTICE WOODS, *concurring.* I concur in the result, but do not think the evidence of the witness Davis was admissible on the ground stated by the Chief Justice that, "it was a recognition by the railroad that persons injured by the wreck were entitled to compensation therefor." On the contrary, I think the better rule is that evidence of settlement of claims of others growing out of alleged negligence in the same transaction is not relevant. 1 Elliott on Evidence, sec. 240. If such evidence is admitted it is obvious that justice would require that the defendant be allowed to show any peculiar merits in the claim settled distinguishing it from that on trial, and this would result in requiring the jury to determine the distinctions to be drawn between the claim on which they were to find a verdict and as many others as the plaintiff might discover to have been settled and choose to bring into the case. Besides, the highest public policy suggests that those charged with liability in such matters should be encouraged to settle claims, rather than have placed before them in the consideration of just claims the menace of settling them at the peril of having to justify such setlement in a suit brought by another whose claim it considered unjust, and show wherein the claims were distinguishable.

In this case, however, I do not think the admission of

the evidence was of any practical importance.    The witness proved nothing more than that he was injured in the wreck while in the employment of the railroad company, and that the company paid his salary for the portion of the month that he was unable to perform his duties.    Such a natural and usual act of consideration to an employee, injured without fault on his part, I do not think any reasonable jury would regard an admission of liability for negligence.